UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

HEIDI MCCLURE,                                          :
                                                        :
                        Plaintiff,                      :
                                                        :       REPORT AND
        -against-                                       :       RECOMMENDATION
                                                        :
JUDGE JACQUELINE WILLIAMS, JUDGE ROBERT                 :       No. 23-CV-02415-RPK-JRC
HETTELMAN, LISA TROJNAR-YAGEL, LAQUITA                  :
HODGES, TAURINA CARPENTER, RASHIMA                      :
FERGUSON, MARIE NESTOR, DANIELLE                        :
BAPTISTE, JOSHUA CLARKE, ADMINISTRATION                 :
FOR CHILDREN'S SERVICES, POLICE OFFICER                 :
HILL, POLICE OFFICER REYNOLDS, 5 UNKNOWN                :
KINGS COUNTY HOPSPITAL POLICE OFFICERS,                 :
CITY OF NEW YORK and KINGS COUNTY,                      :
                                                        :
                        Defendants.                     :
                                                        :
-------------------------------------------------------------------- x

JAMES R. CHO, United States Magistrate Judge:

        Plaintiff Heidi McClure ("plaintiff") commenced this action against various defendants

for actions taken in the course of a removal proceeding brought pursuant to Article X of the New

York State Family Court Act.  *See generally* Dkt. 57 ("Am. Compl.").  Plaintiff brings claims

against two judges of the Kings County Family Court ("KCFC"), Jacqueline Williams ("Judge

Williams") and Robert Hettelman ("Judge Hettelman," and together with Judge Williams,

"Judicial Defendants"); the Administration for Children's Services ("ACS"); ACS attorney Lisa

Trojnar-Yagel ("Trojnar-Yagel"); ACS employees Laquita Hodges, Taurina Carpenter

("Carpenter"), and Rashima Ferguson (together, "ACS Employees"); the City of New York (the

"City"); Kings County; two police officers identified as "Police Officers Hill and Reynolds"

("NYPD Officers"); "5 Unknown Kings County Hospital Police Officers"; and, finally, three

employees of an organization called Rising Grounds, Marie Nestor ("Nestor"), Danielle Baptiste

("Baptiste"), and Joshua Clarke ("Clarke" and collectively, "non-moving defendants").[1] Plaintiff brings claims for constitutional violations pursuant to 42 U.S.C. § 1983 (Count Three), as well as invasion of privacy (Count One), abuse of process (Count Two), conversion (Count Four), and conspiracy to deny plaintiff her constitutional rights (Count Five). Plaintiff seeks injunctive relief and monetary damages. *See generally* Am. Compl.[2]

Before the Court, on referral from the Honorable Rachel P. Kovner, are four motions to dismiss. *See* Order Referring Mots. dated Mar. 20, 2024. Judicial Defendants both move to dismiss on grounds of immunity and failure to state a claim. *See* Dkts. 69–70 (Judge Williams), 78–89 (Judge Hettelman). ACS, Trojnar-Yagel, ACS Employees, and the City (together, the "Municipal Defendants") move to dismiss for failure to state a claim, prosecutorial immunity, and qualified immunity. *See* Dkts. 62–64. Lastly, NYPD Officers move to dismiss for failure to state a claim and qualified immunity. *See* Dkts. 82–83.[3] Throughout this motion, the Court refers to the defendants who have filed motions to dismiss as the "Moving Defendants."

As set forth below, the Court respectfully recommends granting Moving Defendants' motions in part and denying in part, with leave to amend as to only two claims: plaintiff's Section 1983 claims against ACS Employees and NYPD Officers on theories of procedural due process violations and unlawful entry.

## Background

Plaintiff, proceeding *pro se*, brings this action alleging that defendants removed her child (referred to as the "Child") in violation of 42 U.S.C. § 1983 and other federal and state laws. *See*

---

[1] Non-moving defendants Nestor, Baptiste, and Clarke filed their answer to the Amended Complaint on December 21, 2023. Dkt. 66.
[2] Cites to "ECF page" refer to the page number assigned by the Electronic Case Filing ("ECF") system.
[3] For ease, the Court analyzes the Judicial Defendants' motions in tandem because they raise the same arguments, and because the Court recommends granting both motions on immunity grounds. Similarly, despite filing separate motions, the Court will consider the Section 1983 claims against ACS Employees and NYPD Officers together because their respective motions raise substantially similar grounds for dismissal.

*generally* Am. Compl.  Plaintiff alleges that on September 20, 2021, she received notice of a neglect petition filed against her by ACS, which recommended removal of her Child.  *Id.* ¶¶ 35–37; *see also* Neglect Petition dated October 4, 2021, Decl. of Mark G. Toews ("Toews Decl.") Ex. A, Dkt. 64-1.[4]  Records from the KCFC proceedings show that following the filing of the first neglect petition, plaintiff was subject to a series of orders requiring her to meet with ACS officials at various times.  *See* Orders dated October 4, 2021 through October 26, 2021, Toews Decl. Exs. B–F, Dkts. 64-2–64-6.

According to plaintiff, on December 6, 2021, the Child was taken into ACS custody.  Am. Compl. ¶ 46.  She alleges that defendants ACS Employees and NYPD Officers effected the removal with "no warrant or probable cause when they came into her private home and seized her daughter."  *Id.* ¶ 109.  The following day, ACS filed a second neglect petition recommending removal of the Child.  *See* Neglect Petition dated December 7, 2021, Toews Decl. Ex. G, Dkt. 64-7.  That same day, Judge Williams remanded the Child into the custody of the ACS Commissioner.  *See* Order dated December 7, 2021 ("Removal Order"), Toews Decl. Ex. H, Dkt. 64-8.  Finally, on December 17, 2021, Judge Williams issued temporary orders of protection.  *See* Orders dated December 17, 2021 ("TROs"), Toews Decl. Exs. I, L, Dkts. 64-9, 64-12.  On June 21, 2023, Judge Williams denied plaintiff's application for the return of the Child.  Toews Decl. Ex. M, Dkt. 64-13.

Plaintiff filed her original complaint on March 29, 2023.  Dkt. 1.  On the same day, plaintiff paid a filing fee and moved for a temporary injunction.  Dkts. 2, 3.  On April 10, 2023,

---

[4] The Municipal Defendants included with their motion papers certain orders of the underlying Family Court proceedings that, in part, form the basis for plaintiff's Amended Complaint.  The Court summarizes the Family Court orders here merely to provide context.  Courts may take judicial notice of other court documents in deciding a motion to dismiss.  *See, e.g.*, *Villanueva v. City of New York*, No. 08-Civ.-8793, 2010 WL 1654162, at *5 (S.D.N.Y. Apr. 14, 2010) (taking judicial notice of "the court orders . . . from the underlying Family Court Proceedings in deciding th[e] motion [to dismiss]"); *Lomnicki v. Cardinal McCloskey Servs.*, No. 04-CV-4548, 2007 WL 2176059, at *1 n.1 (S.D.N.Y. July 26, 2007) (taking judicial notice of Family Court orders on a motion to dismiss).

the Honorable Ann M. Donnelly issued a memorandum and order denying the injunction.  Dkt. 10 ("Injunction Order").  Plaintiff moved for reconsideration of the Injunction Order, Dkt. 14, which Judge Donnelly denied, *see* Dkt. 15.

Judge Williams and the Municipal Defendants moved to dismiss the original complaint, *see* Dkts. 29, 48, but on November 2, 2023, plaintiff moved for leave to file an amended complaint, *see* Dkt. 55.  The Honorable Rachel P. Kovner granted plaintiff's request, rendering the motions to dismiss moot.  *See* Order dated Nov. 22, 2023.  The Amended Complaint named additional defendants and added two new counts.  *See* Am. Compl.

Thereafter, Moving Defendants filed renewed motions.  On December 21, 2023, Municipal Defendants moved to dismiss the Amended Complaint.  *See* Dkt. 62.  Judge Williams moved on December 22, 2023, *see* Dkt. 69, and Judge Hettelman on January 19, 2024, *see* Dkt. 78.  On January 26, 2024, NYPD Officers Ayana Hill ("Officer Hill") and Demetrius Reynolds ("Officer Reynolds") moved to dismiss.  *See* Dkt. 82.  Plaintiff opposed defendants' motions, *see* Dkts. 90, 100–03, and Moving Defendants filed replies in support of their motions, *see* Dkts. 94 (Judge Hettelman), 96 (Municipal Defendants and NYPD Officers), and 98 (Judge Williams).

### Legal Standards

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a party to move to dismiss a complaint for "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Rives v. SUNY Downstate Coll. of Med.*, No. 20-CV-621, 2022 WL 4646820, at *4 (E.D.N.Y. Sept. 30, 2022) (Kovner, J.) (quoting *Lyons v. Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016)).  "When considering a motion to dismiss under Rule 12(b)(1), the court takes as true the factual

4

allegations in the complaint but does not draw inferences favorable to the party asserting jurisdiction." *Id*.

Rule 12(b)(6) of the Federal Rules of Civil Procedure directs a court to dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The facial "plausibility standard is not akin to a 'probability requirement,'" but it requires a plaintiff to allege sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 556). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof [of the facts alleged] is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks and citation omitted). Courts "liberally" construe complaints of *pro se* plaintiffs "however inartfully pleaded," and hold such complaints "to less stringent standards than formal pleadings drafted by lawyers." *Rives*, 2022 WL 4646820, at *4 (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

## Discussion

### I.    Abstention

The Court first turns to the abstention doctrines raised in support of the Moving Defendants' motions to dismiss: *Younger* abstention and the domestic-relations doctrine.

#### A.    Injunctive Relief

The Court construes plaintiff's request for declaratory and injunctive relief as a request that the Court intervene in the state custody proceedings against her. *See, e.g.*, Am. Compl. ¶ 93 (requesting a "declaratory judgment regarding the misclassification and misapplication of the

statutes upon [plaintiff] and to demand that KCFC terminate this illegal prosecution . . . .").  To the extent the Amended Complaint requests such relief, plaintiff's claims therein are barred for the same reasons stated in Judge Donnelly's Injunction Order.  *See* Dkt. 10.  Specifically, as Judge Donnelly explained in the Injunction Order, plaintiff's request for injunctive relief "is barred by the *Younger* abstention doctrine, the domestic-relations doctrine, § 1983's text and the Anti-Injunction Act."  *Id.* at 2.  The undersigned, therefore, recommends dismissing the Amended Complaint to the extent it requests declaratory or injunctive relief.

### B.    Damages

The Amended Complaint also seeks damages for various alleged violations of the U.S. Constitution, federal statutes, and state law.  *See, e.g.*, Am. Compl. ¶ 93 (requesting "money damages").  The Court recommends abstaining from hearing Counts Four and Five, but does not recommend abstention as to plaintiff's remaining claims.

### i.    *Younger* Abstention

"*Younger* abstention is mandatory when:  (1) there is an ongoing state proceeding; (2) an important state interest is involved; and (3) the plaintiff has an adequate opportunity for judicial review of his [or her] constitutional claims during or after the proceeding."  *Fleming v. Grosvenor*, No. 08-CV-3074, 2008 WL 3833589, at *2 (E.D.N.Y. Aug. 15, 2008).  However, "[w]hen money damages, as opposed to equitable relief, are sought, it is less likely that unacceptable interference with the ongoing state proceeding, the evil against which *Younger* seeks to guard, would result from the federal court's exercise of jurisdiction."  *Kirschner v. Klemons*, 225 F.3d 227, 238 (2d Cir. 2000); *see also Hollenbeck v. Boivert*, 330 F. Supp. 2d 324, 331 n.7 (S.D.N.Y. 2004) ("The application of the *Younger* doctrine, however, is inappropriate where the litigant seeks money damages for an alleged violation of § 1983.").

Some courts in this Circuit nonetheless apply *Younger* to stay, rather than bar, damages claims where "the resolution of the claims for monetary damages still places the Court in the awkward position of having to question the validity of the underlying state proceedings." *Torres v. Gaines*, 130 F. Supp. 3d 630, 637 (D. Conn. 2015). Here, plaintiff raises certain claims that may cause the Court to interfere with the Family Court proceedings.[5] However, as discussed below, plaintiff also complains of alleged constitutional violations relating to the pre-removal ACS investigation, warrantless entry into her home, and emergency removal of her Child. *See* Part III.B, below. The Court sees little risk that a potential award for money damages on claims related to that incident would interfere with the ongoing Family Court proceedings, which are "concerned with determining the current health, well-being, status, and placement of the" Child. *Jones v. Cnty. of Westchester*, 678 F. App'x 48, 50 (2d Cir. 2017) (summary order). Thus, the Court recommends finding that *Younger* does not serve to bar or stay plaintiff's claims for money damages.

### ii.    Domestic-relations Doctrine

With respect to the domestic-relations doctrine, the Court recommends abstention as to plaintiff's conversion (Count Four) and conspiracy (Count Five) claims. In the Second Circuit, a "Court may be deprived of jurisdiction over claims that begin and end in a domestic dispute, even if the plaintiff is seeking only monetary damages." *McKnight v. Middleton*, 699 F. Supp. 2d 507, 517 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011) (internal quotation marks omitted); *see Schottel v. Kutyba*, No. 06-1577-CV, 2009 WL 230106, at *1 (2d Cir. Feb. 2, 2009). For example, in *Schottel*, the plaintiff sought only money damages for alleged fraud and coercion in the course of divorce and custody proceedings. 2009 WL 230106, at *1; *see also*

---

[5] The Court need not address whether these types of claims should be stayed under *Younger* because, as set forth below, the Court recommends abstention under the domestic-relations doctrine.

*McKnight*, 699 F. Supp. 2d at 519 (declining to hear tort claims that amounted to no more than challenges to custody arrangements). To the extent plaintiff seeks to remedy violations of her "parental rights" due to the removal of her Child, plaintiff in effect asks the Court to challenge KCFC's ongoing inquiry and decisions concerning the Child's placement, including Judge Williams's Removal Order and TROs. Accordingly, the Court recommends dismissing the claims for conversion (Count Four) and conspiracy[6] (Count Five) on domestic-relations abstention grounds. Without addressing the viability of plaintiff's legal theories,[7] those counts rest on nothing more than allegations that she was deprived of custody of the Child through procedures in Kings County Family Court.

In contrast, "courts have declined to dismiss suits for lack of jurisdiction where the plaintiff seeks damages to remedy alleged constitutional violations in connection with an improper state domestic relations proceeding." *Ogunbayo v. Montego Med. Consulting, P.C.*, No. 11-CV-4047, 2012 WL 6625921, at *3 (E.D.N.Y. Dec. 19, 2012). In *Ogunbayo*, the Court did not apply the domestic-relations doctrine to plaintiff's request for "damages to compensate her for the alleged procedural and substantive Due Process violations that occurred during the Family Court proceedings," noting that "[f]ederal courts routinely undertake such constitutional determinations." *Id.* As discussed in the *Younger* context, many of plaintiff's claims, when construed liberally, may raise constitutional issues surrounding the ACS investigation and

---

[6] Because the Court recommends dismissing all claims against Judge Williams, Judge Hettelman, and Trojnar-Yagel, *see* Parts II.A. and II.B, below, Count Five—brought against only those three defendants—may be dismissed on these alternative grounds.

[7] The Court will note, however, that plaintiff's conversion claim (Count Five) is patently without merit. *See* Am. Compl. ¶ 120 ("[plaintiff] owns or has the right to possess the parental rights of her God-given daughter from her birth until present"); *id.* ¶ 121 ("All Defendants intentionally interfered with [plaintiff]'s personal property by claiming they exercised dominion and control over [plaintiff]'s parental rights."). "Generally, only tangible property can be the subject of a conversion action, but intangible rights can form the basis of conversion damages when the converted property is a document into which intangible rights have merged." *Ancile Inv. Co. Ltd. v. Archer Daniels Midland Co.*, 784 F. Supp. 2d 296, 312 (S.D.N.Y. 2011). Because plaintiff's parental rights are not a form of tangible or intangible property, her conversion claim must fail.

subsequent emergency removal of the Child.  Such claims are squarely within the purview of the federal courts, and, thus, the Court does not recommend abstention as to the remaining claims.

## II.    Immunity

Plaintiff brings claims for abuse of process (Count Two) and constitutional violations under Section 1983 (Count Three), arising out of the actions taken by Judicial Defendants and Trojnar-Yagel in the Family Court proceedings against plaintiff and KCFC's decision to remove the Child from plaintiff's custody.  *See* Am. Compl. ¶ 62 ("[Plaintiff] alleges a conspiracy between Williams, Yagel and Hettelman, to deprive her of parental rights."); *id.* ¶ 95 ("Defendants Williams, Hettelman and Yagel illegally and improperly used administrative processes to prosecute [plaintiff] and her private family.").  Judicial Defendants and Trojnar-Yagel move to dismiss based on immunity grounds.  For the reasons set forth below, the Court recommends dismissing all claims against Judge Williams, Judge Hettelman, and Trojnar-Yagel.

### A.    Judicial Defendants

#### i.    Judicial Immunity

Plaintiff asserts her Section 1983 claims against Judicial Defendants in their "[p]rivate capacit[ies]."  Am. Compl. ¶¶ 9–10.  Insofar as Judicial Defendants are sued in their "private" individual capacities, they are shielded by absolute judicial immunity.  Judges have absolute immunity from suit for actions performed in their role as judges.  *See Mireles v. Waco*, 502 U.S. 9, 11 (1991); *see also Deem v. DiMella-Deem*, No. 18-CV-11889, 2019 WL 1958107, at *9 (S.D.N.Y. May 2, 2019), *aff'd*, 800 F. App'x 62 (2d Cir. 2020) ("The Second Circuit and district courts therein have specifically applied such immunity to Family Court judges."); *see also Jackson v. Cnty. of Nassau*, No. 06-CV-40, 2006 WL 8435314, at *3 (E.D.N.Y Nov. 4, 2006) (judicial immunity protects judges acting in their individual capacity).  Judicial immunity "is not

overcome by allegations of bad faith or malice," nor can a judge "be deprived of immunity because the action he [or she] took was in error . . . or was in excess of his [or her] authority." *Mireles*, 502 U.S. at 11, 13.  Rather, the immunity may be overcome only if the judge is alleged to have taken nonjudicial actions or if the judicial actions taken were "in the complete absence of all jurisdiction." *Id.* at 11–12.  An act will be considered judicial if "it is a function normally performed by a judge" and the parties "dealt with the judge in [the judge's] judicial capacity." *Huminski v. Corsones*, 396 F.3d 53, 75 (2d Cir. 2005) (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)).

Here, plaintiff does not allege that Judicial Defendants took nonjudicial actions or acted in the absence of jurisdiction.  Plaintiff challenges Judge Williams's issuance of the TROs, *see* Am. Compl. ¶¶ 27, 52, and the ultimate decision to remove the Child from plaintiff's custody, *see id.* ¶ 111.  These allegations do not concern actions taken outside of Judicial Defendants' roles as Family Court judges.  Although plaintiff appears to allege that KCFC lacks authority to adjudicate the case pertaining to plaintiff and the Child, *see* Am. Compl. ¶¶ 56–57, this argument is vague and plainly lacks merit.  The Court, therefore, recommends dismissing all claims against Judicial Defendants with prejudice on the basis of judicial immunity.

### ii.  Eleventh Amendment

To the extent plaintiff sues Judicial Defendants in their official capacities, such claims are barred by the Eleventh Amendment.  State governments may not be sued in federal courts by private parties "unless they have waived their Eleventh Amendment immunity" or unless Congress has abrogated the states' immunity.  *See Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006)); *see also Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253–54 (2011).  "[T]he

immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Gollomp*, 568 F.3d at 366 (quoting *Woods*, 466 F.3d at 236).  The New York State Unified Court System "is unquestionably an arm of the State . . . and is entitled to Eleventh Amendment sovereign immunity."  *Id.* at 368 (internal quotation marks and citation omitted).

An action against an individual in her "official capacity" is "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978)).  Judicial Defendants are agents of KCFC, which is part of the New York Unified Court System.  There is no basis on which to conclude that immunity has been waived or abrogated. Accordingly, the Court recommends dismissing the claims against Judicial Defendants in their official capacities pursuant to the Eleventh Amendment.

### B.    Trojnar-Yagel

Prosecutors enjoy absolute immunity from civil damages suits "for those prosecutorial activities intimately associated with the judicial phase of the criminal process." *Anilao v. Spota*, 27 F.4th 855, 864 (2d Cir. 2022) (quoting *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987)). Prosecutorial immunity applies to common-law torts as well as Section 1983 actions.  *See Imbler v. Pachtman*, 424 U.S. 409, 424 (1976); *Flagler v. Trainor*, 663 F.3d 543, 546 (2d Cir. 2011). Notably, "absolute immunity also extends to non-prosecutor officials when they are performing 'functions analogous to those of a prosecutor.'" *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Butz v. Economou*, 438 U.S. 478, 515 (1978)).  In this Circuit, "ACS attorneys are entitled to absolute immunity."  *Black v. Ranley*, No. 17-CV-9026, 2018 WL 2766138, at *7 (S.D.N.Y. June 8, 2018) (citing *Cornejo*, 592 F.3d at 12).

11

"When assessing whether claims are barred by absolute immunity, courts focus on 'the nature of the function performed' rather than the 'identity of the actor who performed it.'" *Baron v. Lissade*, No. 19-CV-6256, 2021 WL 4407836, at *7 (E.D.N.Y. Sept. 27, 2021) (quoting *Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004)).  Here, the allegations against Trojnar-Yagel concern only her involvement in prosecuting the removal proceedings against plaintiff.  *See, e.g.*, Am. Compl. ¶ 62 (alleging "a conspiracy . . . to deprive [plaintiff] of [her] parental rights"); *id.* ¶ 90 (alleging disclosure of private facts "through Kings County Family public Court proceedings"); *id.* ¶ 95 (alleging Trojnar-Yagel "illegally and improperly used administrative processes to prosecute" plaintiff).  Accordingly, all claims against Trojnar-Yagel are barred by prosecutorial immunity, and the Court recommends dismissing the claims against Trojnar-Yagel with prejudice.

## III.    Section 1983 Claims (Count Three)

Plaintiff alleges various constitutional violations by all defendants, including First, Fourth, Fifth, Thirteenth, and Fourteenth Amendment violations, and various statutory violations.  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege both that:  (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A.    ACS, the City of New York and Kings County

The Court recommends dismissing plaintiff's Section 1983 claims against ACS because it is not a suable entity.  *See* N.Y. City Charter Ch. 17, § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Friedman*

*v. N.Y.C. Admin. For Children's Servs.*, 502 F. App'x 23, 27 n.3 (2d Cir. 2012) (ACS is not a suable entity); *Yi Sun v. New York City Police Dep't*, No. 18-CV-11002, 2020 WL 4530354, at *4 (S.D.N.Y. Aug. 6, 2020) (same).

The Amended Complaint also names the City of New York and Kings County.[8] However, to state a Section 1983 claim against a municipality, a plaintiff must show that the municipality itself caused the violation of the plaintiff's rights, *see Connick v. Thompson*, 563 U.S. 51, 60 (2011), by alleging facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80–81 (2d Cir. 2012); *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997); *see also Torcivia v. Suffolk Cnty., New York*, 17 F.4th 342, 363 (2d Cir. 2021) (applying *Monell* to county defendant). Although the City is named as a defendant, the Amended Complaint does not appear to contain any allegations against the City—for constitutional violations or otherwise. Further, the Amended Complaint is devoid of any facts showing that a policy, custom, or practice of the City caused violations of plaintiff's federal constitutional rights.

The Court recommends dismissal with prejudice of all claims against ACS, the City and Kings County.

---

[8] Although Kings County has not yet appeared in the action, the Court recommends *sua sponte* dismissal of the claims against it. Generally, "a district court has no authority to dismiss a complaint for failure to state a claim upon which relief can be granted without giving the plaintiff an opportunity to be heard." *Perez v. Ortiz*, 849 F.2d 793, 797 (2d Cir. 1988) (internal quotation marks and citations omitted). Here, the basis for dismissing Kings County is entirely coterminous with the Court's reason for dismissing the City of New York: failure to allege a policy, custom, or practice. Plaintiff was presented with this exact argument in the Municipal Defendants' moving papers, Dkt. 63, and she was given an opportunity to respond in her opposition. Plaintiff, apparently, declined to do so. The majority of the opposition is devoted to the same argument that defendants' attorneys must establish their authority, *see* Dkt. 90 at ECF pages 13–22, which has previously been addressed and rejected by Judge Donnelly, *see* Order dated Aug. 8, 2023.

B.    **ACS Employees and NYPD Officers**[9]

Plaintiff alleges various constitutional violations against ACS Employees and NYPD

Officers arising out of their alleged entry into her home and removal of the Child from plaintiff's

custody.  *See, e.g.*, Am. Compl. ¶ 109.  The Court addresses each alleged violation in turn.[10]

i.    **Substantive Due Process**

Construing the Amended Complaint liberally, plaintiff's claims concern the removal of

her Child prior to ACS obtaining a court order.  Such allegations may implicate substantive due

process, which "provides heightened protection against government interference with certain

fundamental rights and liberty interests."  *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).

"To establish a violation of substantive due process rights, a plaintiff must demonstrate that the

state action was 'so egregious, so outrageous, that it may fairly be said to shock the

contemporary conscience.'"  *Southerland v. City of New York*, 680 F.3d 127, 151 (2d Cir. 2012)

(quoting *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009)).

"Parents . . . have a constitutionally protected liberty interest in the care, custody and

management of their children."  *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999).

Therefore, removal of a child by the state can give rise to a substantive due process claim.

Relevant to this case, brief removals of a child "generally do not rise to the level of a

---

[9] ACS Employees and NYPD Officers seek dismissal of the constitutional claims against them based, *inter alia*, on qualified immunity.  But "[a] determination on the question of qualified immunity at this stage in the proceeding is premature."  *Sulaymu-Bey v. City of New York*, No. 17-CV-3563, 2019 WL 1434597, at *12 (E.D.N.Y. Mar. 29, 2019); *see also Hollenbeck*, 330 F. Supp. 2d at 335 (noting defendants' concession that "it is an unusual case where the question of qualified immunity can be resolved on a motion to dismiss").  Municipal Defendants cite only cases at the summary judgment stage in support of their position, and they ask the Court to rely on facts contained in the Neglect Petition.  *See* Dkt. 63 ("Municipal Defs. Mem."), at 20–21.  On a motion to dismiss, the Court may "take judicial notice of documents filed in other courts"; however, it cannot do so "for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).  The Court accordingly recommends denying Municipal Defendants' motions to dismiss on qualified immunity grounds.

[10] Plaintiff references the First Amendment in her Amended Complaint, Am. Compl. ¶ 106, but alleges no further facts in support of any First Amendment violations.  To the extent plaintiff seeks to raise a First Amendment claim, the Court recommends dismissing this claim on the grounds that it fails to state a claim and also fails to satisfy the pleading requirements set forth in Rule 8 of the Federal Rules of Civil Procedure.

substantive due process violation, at least where the purpose of the removal is to keep the child safe during investigation and court confirmation of the basis for removal." *Nicholson v. Scoppetta*, 344 F.3d 154, 172 (2d Cir. 2003). Plaintiff alleges that on December 6, 2021, her Child "was taken into ACS custody against [plaintiff's] and [the Child]'s will." Am. Compl. ¶ 46. However, the record shows that the following day, December 7, 2021, Judge Williams issued an order finding that "it would be contrary to the welfare of the [Child] to remain in the care of the [plaintiff]" and remanding the Child into ACS custody. *See* Removal Order.

Thus, the removal of the Child prior to court confirmation the following day does not "shock the contemporary conscience" and does not amount to a substantive due process claim. *See, e.g.*, *Schweitzer v. Crofton*, 935 F. Supp. 2d 527, 549 (E.D.N.Y. 2013), *aff'd*, 560 F. App'x 6 (2d Cir. 2014) (no substantive due process violation for six-day removal of child, during which time the county department of social services filed a neglect petition in Family Court and the parties held a post-removal judicial hearing); *Hagans v. Maher*, No. 18-CV-1917, 2022 WL 4538561, at *6 (E.D.N.Y. Sept. 28, 2022) (no substantive due process violation where removing agency filed petition the following day and Family Court issued removal order three days later).

Significantly, once a court confirms the basis for the removal, "any liability for the continuation of the allegedly wrongful separation of parent and child can no longer be attributed to the officer who removed the child." *Southerland*, 680 F.3d at 153. To the extent plaintiff challenges the removal of her child following the Removal Order, such actions are not attributable to ACS Employees.

Because the brief removal prior to judicial confirmation does not rise to the level of a substantive due process claim, and because any removal following Judge Williams's orders absolves ACS Employees and NYPD Officers of any further liability, the Court recommends

dismissing with prejudice plaintiff's substantive due process claim for failure to state a claim. *See Jones-Bey v. Chen*, No. 21-CV-6142, 2021 WL 4255056, at *7 (S.D.N.Y. Sept. 17, 2021) ("Plaintiff alleges that ACS workers . . . 'removed' her children, but she fails to allege any facts suggesting that these defendants did anything improper.").

> **ii.    Procedural Due Process**

The Court also interprets the Amended Complaint to include a procedural due process claim. *See, e.g.*, Am. Compl. ¶ 39 ("Since its inception . . . , this case has not undergone due process."). "In order to state a procedural due process claim, . . . plaintiffs must allege that the children were removed without parental permission and without Court authorization. Plaintiffs must further allege that the removal was not conducted under emergency circumstances." *Hollenbeck*, 330 F. Supp. 2d at 332; *see also Southerland*, 680 F.3d at 142 ("The Fourteenth Amendment imposes a requirement that except in emergency circumstances, judicial process must be accorded both parent and child before removal of the child from his or her parent's custody may be effected.").

Plaintiff alleges that the Child was removed without her consent, *see* Am. Compl. ¶ 89, and the record establishes that the removal occurred prior to subsequent authorization by KCFC, which was obtained the following day, *see* Removal Order. However, the allegations in the Amended Complaint fail to establish that the Child's removal occurred in the "absence of an immediate threat of harm to [the Child's life] or health." *Southerland*, 680 F.3d at 139. In fact, the allegations show that on the date of the incident, the Child was admitted to Kings County Hospital. Am. Compl. ¶ 89. Thus, plaintiff's own allegations suggest that a reasonable basis— the Child's need for medical care—may have existed to justify the emergency removal. *See E.D. ex rel. V.D. v. Tuffarelli*, 692 F. Supp. 2d 347, 361 (S.D.N.Y. 2010), *aff'd sub nom. E.D. ex rel.*

16

*Demtchenko v. Tuffarelli*, 408 F. App'x 448 (2d Cir. 2011) ("Risks that a child will suffer actual injury . . . can suffice to create an emergency." (internal quotation marks and citation omitted)).

Some Courts in this Circuit have dismissed procedural due process claims *with* prejudice where the pleadings established that the children would have remained alone absent an emergency removal. *See, e.g.*, *Hagans*, 2022 WL 4538561, at *7 (dismissing with prejudice plaintiff's procedural due process claims where "[p]laintiff was arrested and incarcerated the same day her children were removed," which "would have left the children without care and supervision"). In contrast, "[a] delay—or even a failure—to provide medical care will not necessarily establish 'an imminent danger to the children's life or limb.'" *McLoughlin v. Rensselaer Cnty. Dep't of Soc. Servs.*, No. 18-CV-0487, 2019 WL 3816882, at *6 (N.D.N.Y. Aug. 14, 2019) (quoting *Southerland*, 680 F.3d at 135–36, 151). The Court, therefore, recommends dismissing plaintiff's procedural due process claims without prejudice. *See Hagans v. Nassau Cnty. Dep't of Soc. Servs.*, No. 18-CV-1917, 2020 WL 1550577, at *6 (E.D.N.Y. Mar. 31, 2020) (dismissing *pro se* plaintiff's procedural due process claim with leave to amend for failure to plead sufficient detail regarding the procedures challenged). Namely, the Court recommends granting leave to amend to allow plaintiff an opportunity to allege facts showing no emergency circumstances existed to justify removal prior to obtaining court authorization.

### iii.    Fourth Amendment

The Court construes the Amended Complaint to contain a Fourth Amendment unlawful entry claim. Specifically, plaintiff alleges that ACS Employees and NYPD Officers violated her Fourth Amendment right against unreasonable searches and seizures when ACS Employees "came into her private home and seized her daughter" "with no warrant or probable cause." Am. Compl. ¶ 109.

17

The Fourth Amendment prohibits warrantless entry into an individual's home unless an exception to the warrant requirement exists. One exception to the warrant requirement is the existence of exigent circumstances. *Thompson v. Clark*, 364 F. Supp. 3d 178, 190 (E.D.N.Y. 2019). "[T]he essential question in determining whether exigent circumstances justified a warrantless entry is whether law enforcement agents were confronted by an urgent need to render aid or take action." *Loria v. Gorman*, 306 F.3d 1271, 1284 (2d Cir. 2002) (internal quotation marks and citation omitted).

In the emergency child removal context, "there is no practical difference between emergency circumstances—the standard used to evaluate plaintiff['s] Fourteenth Amendment claim on [her Child's] removal—and probable cause/exigent circumstances—the standard used to evaluate the plaintiff['s] Fourth Amendment claim." *Southerland v. Woo*, 44 F. Supp. 3d 264, 276 (E.D.N.Y. 2014), *aff'd*, 661 F. App'x 94 (2d Cir. 2016); *see also Callahan v. City of New York*, 90 F. Supp. 3d 60, 73 (E.D.N.Y. 2015) ("[T]he Court having found that there were probable cause and exigent circumstances to justify the officers' taking of the children to ACS, the Court must now also find that there were emergency circumstances in this case.").

Here, defendant Carpenter, an ACS employee, who visited plaintiff's home on December 6, 2021, noticed that the Child was wearing a bloody sock on her left foot. *See* Neglect Petition dated December 7, 2021, Toews Decl. Ex. G, Dkt. 64-7. Plaintiff allegedly refused to let Carpenter examine the child's foot and plaintiff "went back in the home and would not come out." *Id*. at ECF page 7; *see also* Dkt. 63. Thereafter, plaintiff alleges that ACS Employees and the non-moving defendants "came *into* her private home and seized her daughter." Am. Compl. ¶ 109 (emphasis added); *see also* Am. Compl. ¶ 89 ("police officers Hill and Reynolds came to [plaintiff]'s private home and forced [plaintiff]'s daughter to Kings County Hospital against the

18

consent of [plaintiff] and her daughter.").

These allegations lack sufficient detail surrounding the entry itself, including which particular defendants entered plaintiff's home.  Further, plaintiff has not alleged facts sufficient to show the alleged entry into her home was conducted in the absence of exigent circumstances. *See United States v. Klump*, 536 F.3d 113 (2d Cir. 2008) ("Exigent circumstances provide an exception to the Fourth Amendment's warrant requirement."); *Tenenbaum*, 193 F.3d at 604 (noting that "it is core Fourth Amendment doctrine that a seizure without consent or a warrant is a reasonable seizure if it is justified by exigent circumstances" (internal quotation marks and citations omitted)).  Thus, the Court recommends dismissal of plaintiff's Fourth Amendment claims with leave to amend should plaintiff wish to address the issues raised herein.

### iv.    Fifth Amendment Takings Clause Claims

Plaintiff also invokes the Takings Clause of the Fifth Amendment.  *See* Am. Compl. ¶ 48 ("[Plaintiff]'s private property was taken without just compensation."); *id.* ¶ 111 (alleging that Judicial Defendants "violated the Takings Clause of the 5th amendment when they used [plaintiff]'s property of her daughter for corporate business use as a covenant with the State, without just compensation").

The Takings Clause pertains to private property, not child custody.  *See, e.g.*, *Cmty. Hous. Improvement Program v. City of New York*, 59 F.4th 540, 550 (2d Cir. 2023) ("The Takings Clause of the Fifth Amendment provides that '*private property* [shall not] be taken for public use, without just compensation.'" (emphasis added) (citation omitted)).  As this Court has explained, *see* Subpart I.B.ii., above, plaintiff's claim that she "owns or has the right to possess the parental rights of her God-given daughter from her birth until present," Am. Compl. ¶ 120, does not establish a property right.  As district courts in other circuits have advised, "[c]hildren

19

are not private property and the government is not required to compensate parents with a fair price (if such a thing could even be imagined) for children removed from their home." *Epps v. Russell Cty. Dep't of Human Res.*, No. 15-CV-25, 2015 WL 1387950, at *7 (M.D. Ala. Mar. 25, 2015). Plaintiff's claim that "[a]ll Defendants intentionally interfered with [plaintiff]'s personal property by claiming they exercised dominion and control over [plaintiff]'s parental rights," Am. Compl. ¶ 121, fails for the same reason: children are not property. *See Walthour v. Child & Youth Servs.*, 728 F. Supp. 2d 628, 636 (E.D. Pa. 2010) ("[T]he Court is unaware of any case law finding that children fall within the definition of property under the Takings Clause and the Court therefore has little trouble finding that children are not property."). The Court, therefore, recommends dismissal of plaintiff's Fifth Amendment claims with prejudice.

v.    **Thirteenth Amendment Claims**

Plaintiff also raises claims under the Thirteenth Amendment. *See* Am. Compl. ¶¶ 47, 56–57, 70, 106, 110, 115–16. She alleges that her Thirteenth Amendment rights were violated by, *inter alia*, the failure of Judge Williams to offer proof of "authority to adjudicate over [plaintiff]," *see id.* ¶¶ 56–57, and the removal of the Child without plaintiff's consent, *see id.* ¶ 115.

The Thirteenth Amendment prohibits involuntary servitude. *See Bond v. Bd. of Educ. of City of New York*, No. 97-CV-1337, 1999 WL 151702, at *4 n.2 (E.D.N.Y. Mar. 17, 1999) (holding that plaintiff had failed to allege involuntary servitude in a case involving discrimination and retaliation claims). Here, plaintiff does not "allege that [she was] subjected to slavery, involuntary servitude, or any type of compulsory labor." *Sulaymu-Bey*, 2019 WL 1434597, at *8. Instead, her allegations amount to legal conclusions that are insufficient to establish a plausible claim under the Thirteenth Amendment. *See, e.g.*, Am. Compl. ¶¶ 56–57

20

(alleging that Judge Williams's failure to offer proof of judicial authority "violated [plaintiff]'s 13th amendment rights, making [plaintiff] an involuntary servant").  Thus, the Court recommends dismissing plaintiff's Thirteenth Amendment claims with prejudice.

### vi.    Federal Statutory Claims

Plaintiff also alleges a claim against ACS Employees for violations of the Health Insurance Portability and Accountability Act ("HIPAA").  *See* Am. Compl. ¶¶ 53–55, 114.  However, HIPAA does not provide a private cause of action, either express or implied.  *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 244 (2d Cir. 2020).  "Instead, HIPAA provides for penalties to be imposed by the Secretary of the Department of Health and Human Services." *Id.* (citing 42 U.S.C. § 1320d-5(a)(1)).  The Court recommends dismissal of plaintiff's HIPAA claim with prejudice.

The Court likewise recommends dismissing plaintiff's claim under Title XI of the Social Security Act, 42 U.S.C. § 1301.  *See* Am. Compl. ¶ 112 ("All ACS defendants violated their obligation to the rules pursuant to Title XI of the 1935 SSA.  Section (6)(d), because they took charge of [plaintiff's] daughter over the objection of both the mother and father.").  Plaintiff cites to a provision in the definitions providing that "[n]othing in this chapter shall be construed as authorizing any Federal official, agent, or representative, in carrying out any of the provisions of this chapter, to take charge of any child over the objection of either of the parents of such child." 42 U.S.C. § 1301(d).  This provision does not provide a basis for suit, and, nevertheless, the ACS Employees are not "Federal official[s], agent[s], or representative[s]."

Similarly, plaintiff brings a claim against defendant Carpenter under the Privacy Act of 1974, 5 U.S.C. § 552a.  *See* Am. Compl. ¶ 108.  But the substantive provisions of the Privacy Act do not apply in this context, not least because "[t]he Privacy Act permits a private right of

action against federal agencies only." *Rosado v. Zuckerberg*, No. 21-CV-07840, 2023 WL 5918055, at *3 (S.D.N.Y. Sept. 11, 2023).

In sum, the Court recommends dismissing plaintiff's federal statutory claims for failure to state a claim. Because the Court cannot discern a colorable claim from these allegations, the Court respectfully recommends dismissal with prejudice.

## IV.    State Law Claim

Plaintiff appears to bring a claim for common-law invasion of privacy in Count One of the Amended Complaint. *See* Am. Compl. ¶¶ 86–93. "[P]laintiff's common-law invasion of privacy claim must be dismissed because New York law does not recognize the common-law tort of invasion of privacy, . . . except to the extent the claim concerns the use of a person's name, portrait, or picture for the purposes of trade or advertising without that person's consent." *Lewis v. Experian Info. Sols., Inc.*, No. 23-CV-857, 2024 WL 1308705, at *11 (E.D.N.Y. Mar. 27, 2024) (internal quotation marks and citations omitted). Here, plaintiff has not alleged any facts to support her claim that "Williams, Yagel, Ferguson and Carpenter used the likeness of [plaintiff]'s name under color of law for their own financial advantage," Am. Compl. ¶ 92, nor has she suggested that her name was used for the purposes of trade or advertising. Accordingly, the Court recommends dismissing Count One with prejudice.

## V.    Failure to Identify Defendants

Municipal Defendants move for dismissal of all claims against NYPD Officers Hill and Reynolds for failure to identify them with particularity. *See* Municipal Defs. Mem., at 22. The Amended Complaint also names as defendants "5 Unknown Kings County Hospital Police Officers" ("Doe Officers"), who Municipal Defendants likewise argue should be dismissed from the action. *See id.* Should plaintiff choose to amend her complaint a second time, if leave to do

so is granted, plaintiff must take reasonable steps to identify fully the NYPD Officers, and take reasonable steps to ascertain the identity of the Doe Officers. *See Lang v. Connecticut Dep't of Corr./Superior Courthouse at Waterbury, Connecticut*, No. 19-CV-1967, 2020 WL 607155, at *2 (D. Conn. Feb. 7, 2020) (dismissing without prejudice a plaintiff's Fourth Amendment failure to protect claims where plaintiff sued "Doe defendants in their individual capacities for damages" without naming the Doe defendants or "alleg[ing] specific conduct with respect to [the majority of the] Doe defendants' personal involvement in the asserted [conduct]").

## VI.    Service of Process on Defendant Hill

NYPD Officer Ayana Hill moves to dismiss on the ground that she "has not been served with the Amended Complaint at her current place of employment, the Brooklyn Transit Precinct." Dkt. 83 at 12. "[W]hen district courts consider whether to dismiss a complaint for failure to properly serve, *pro se* plaintiffs 'should be granted special leniency.'" *May v. Levy*, 659 F. Supp. 3d 323, 333 (E.D.N.Y. 2023) (quoting *Thrall v. Cent. N.Y. Reg'l Trans. Auth.*, 399 F. App'x 663, 666 (2d Cir. 2010) (summary order)). "[I]ncomplete or improper service will lead the court to dismiss the action unless it appears that proper service may still be obtained." *Daniels v. Am. Airlines*, No. 19-CV-03110, 2020 WL 9816000, at *12 (E.D.N.Y. Sept. 4, 2020) (quoting *Jaiyeola v. Carrier Corp.*, 73 F. App'x 492, 494 (2d Cir. 2003)).

The Court does not recommend dismissing the claims against Officer Hill at this stage due to improper service because Officer Hill has briefed the merits of plaintiff's claims, and "to avoid the merits at this time would waste judicial resources." *Daniels*, 2020 WL 9816000, at *13 n.13. In any event, if the Court ultimately grants plaintiff leave to amend, and should plaintiff choose to file a Second Amended Complaint addressing any of the issues raised herein, the Court grants plaintiff leave to request an extension of time to serve Officer Hill.

23

## VII.    Claims against the Non-moving Defendants Nestor, Baptiste and Clarke

Finally, plaintiff alleges claims against non-moving defendants Nestor, Baptiste and Clarke in Counts One (invasion of privacy), Three (Section 1983), and Four (conversion) of the Amended Complaint.  *See* Am. Compl.  On December 21, 2023, the non-moving defendants filed their answer to the Amended Complaint.  Dkt. 66.  Even though the non-moving defendants answered the Amended Complaint, the Court *sua sponte* recommends dismissal of Counts One and Four against the non-moving defendants.[11]  The reasons set forth above for dismissal of Count One (invasion of privacy) for failure to state a claim, and Count Four (conversion) based on abstention, against the Moving Defendants also apply to the non-moving defendants.  *See* Subpart I.B.ii. (abstention) and Part IV (failure to state a claim), above.

*Sua sponte* dismissal is proper when a plaintiff is given notice and an opportunity to be heard.  *See Humpherys v. Nager*, 962 F. Supp. 347, 353 (E.D.N.Y. 1997) (citing *Wachtler v. County of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994)).  Here, plaintiff had notice that the Moving Defendants were seeking dismissal of Counts One and Four, and plaintiff responded to the motions.  Further, plaintiff had notice, based on the answer filed by the non-moving defendants, that the non-moving defendants were asserting the affirmative defenses of failure to state a claim and abstention.  *See* Dkt. 66.

Because the reasons for the dismissal of Counts One and Four as to the Moving Defendants are identical to the reasons for the dismissal of these two counts against the non-moving defendants, plaintiff had notice that Count One could be dismissed for failure to state a claim, and Count Four based on abstention.  *See Wachtler,* 35 F.3d at 82 (affirming *sua sponte* dismissal of claim against judge who had not responded to plaintiff's complaint where

---

[11] Because the Court recommends allowing plaintiff leave to amend, in part, her Section 1983 claims (Count Three), the Court does not specifically address whether to recommend *sua sponte* dismissal of any of the claims contained in Count Three as to the non-moving defendants.

"[plaintiff] was given notice that the [other] 'defendants' were moving to dismiss").  For these reasons, the Court recommends the *sua sponte* dismissal of Counts One and Four as to the non-moving defendants.

## Conclusion

Because the Court finds a potential colorable claim surrounding the emergency removal of the Child, the Court respectfully recommends granting leave to amend as to the Section 1983 claims against only ACS Employees and NYPD Officers and only under theories of procedural due process violations and Fourth Amendment unlawful entry.

The undersigned respectfully recommends granting in part and denying in part Moving Defendants' motions as summarized below.

1.     This Court recommends dismissal of the following claims with prejudice:

    a.     Plaintiff's invasion of privacy claim (Count One) as to all defendants;

    b.     Plaintiff's abuse of process claim (Count Two) as to Judicial Defendants and Trojnar-Yagel;

    c.     Plaintiff's conversion claim (Count Four) as to all defendants;

    d.     Plaintiff's conspiracy claim (Count Five) as to Judicial Defendants and Trojnar-Yagel;

    e.     All Section 1983 claims (Count Three) against the City and Kings County;

    f.     All Section 1983 claims against ACS;

    g.     All Section 1983 claims against Judicial Defendants;

    h.     All Section 1983 claims against Trojnar-Yagel;

    i.     Plaintiff's Section 1983 substantive due process claim as to all Moving Defendants;

       j.      Plaintiff's Section 1983 First Amendment claim as to all Moving

Defendants;

       k.      Plaintiff's Section 1983 Fifth Amendment claim as to all Moving

Defendants; and

       l.      Plaintiff's Section 1983 Thirteenth Amendment claim as to all Moving

Defendants.

2.      This Court recommends dismissal of the following claims <u>without</u> prejudice and

with leave to amend:

       a.      Plaintiff's Section 1983 claim against ACS Employees and NYPD

Officers on a procedural due process theory; and

       b.      Plaintiff's Section 1983 claim against ACS Employees and NYPD

Officers on a Fourth Amendment unlawful entry theory.

Any objections to the recommendations made in this Report must be filed with the Honorable Rachel P. Kovner within **14 days** after the filing of this Report and Recommendation and, in any event, on or before **September 9, 2024**. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*) (discussing waiver under the former ten-day limit).

The Clerk's Office is directed to enter this Report and Recommendation into the ECF system and to serve a copy upon the *pro se* plaintiff by first-class mail and overnight courier service.

**SO ORDERED**

Dated: Brooklyn, New York
      August 26, 2024

s/ James R. Cho
James R. Cho
United States Magistrate Judge
